UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

Sarinder Kumar,

                  Debtor.
-------------------------------------------------------------x
Allan B. Mendelsohn, as Trustee of the
Estate of Sarinder Kumar,

                  Plaintiff,

     -against-

Sarinder Kumar,

                  Defendant.
-------------------------------------------------------------x

Case No.: 8-20-71743-las

Chapter 7

Adv. Pro. No.: 8-20-08141-las

## MEMORANDUM DECISION AFTER TRIAL

Plaintiff Allan B. Mendelsohn, Esq., as chapter 7 trustee of the bankruptcy estate of Sarinder Kumar ("Debtor"), commenced this adversary proceeding seeking judgment denying the Debtor a discharge of his debts under 11 U.S.C. § 727(a)(2)(A), (a)(3), (a)(4)(A), and (a)(5).[1] *See generally*, Complaint [Dkt. No. 1]. In brief, plaintiff contends that the Debtor's discharge must be denied based on an alleged transfer of his principal residence, fraudulent statements and omissions in his bankruptcy filing, and concealment of assets. In his answer, the Debtor denied plaintiff's allegations and alleged failure to state a claim as an affirmative defense to these claims.

The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986 (Weinstein, C.J.), as

---

[1] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will hereinafter be referred to as "§ (section number)."

amended by Order dated December 5, 2012 (Amon, C.J.). This is a core proceeding that the Court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J).

The Court conducted a trial at which the Court heard in-person testimony from the Debtor. The Court also received exhibits and heard argument from the parties. Having considered the evidence presented at trial, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), as made applicable to this adversary proceeding by Bankruptcy Rule 7052. To the extent a finding of fact includes a conclusion of law, it is deemed a conclusion of law, and vice versa. For the reasons set forth below, the Court concludes that plaintiff has failed to meet his burden of proof with respect to each claim alleged in the Complaint. Accordingly, judgment is entered in favor of the Debtor.

I.     Findings of Fact

The Court's findings of facts are based on the trial record, which includes the parties' stipulation of certain facts contained in the Joint Pre-Trial Statement ("JPTS"), exhibits admitted into evidence and trial testimony.

A.     Stipulated Facts[2]

The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on March 20, 2020. [JPTS ¶ 1]. On or about June 30, 2010, the Debtor, and his wife, Baljinder Khokhar ("Khokhar"), purchased the real property located at 30 Davis Drive, Hicksville, New York (the "Real Property"). [JPTS ¶ 3]. The Debtor and Khokhar reside at the Real Property. [JPTS ¶ 1]. On or about September 6, 2018, Khokhar refinanced the Mr. Cooper mortgage on

---

[2] The parties stipulated to certain facts in their JPTS. [Dkt. No. 23]. For convenience, the Court will refer to the stipulated facts as "JPTS ¶ __." Additionally, "Tr." will refer to the transcript of the trial. [Dkt. No. 38]. "PX." refers to exhibits introduced at trial by plaintiff, and "DX" refers to exhibits introduced at trial by the Debtor.

the Real Property. [JPTS ¶ 5]. As a result of the refinancing, the monthly mortgage payment was reduced from $2,452.21 per month at an interest rate of 4.87% to $1,978.73 per month at 3.625% interest rate. [JPTS ¶ 5]. On or about September 6, 2018, the Debtor and Khokhar transferred the Real Property to Khokhar, thereby terminating the tenancy by the entirety and all ownership interest of the Debtor in the Real Property ("Transfer 1"). [JPTS ¶ 6]. The deed reflects a no consideration transfer. [JPTS ¶ 6]. On or about October 25, 2019, Khokhar transferred ownership of the Real Property to her and the Debtor ("Transfer 2"), thereby creating a tenancy by the entirety and reinstating the Debtor's interest in the Real Property. [JPTS ¶ 7].

B.    Trial Testimony

Here, the Court summarizes the pertinent testimony of the Debtor – the lone witness at trial. The Court credits and accepts the relevant testimony of the Debtor. "It is within the province of the district court as the trier of fact to decide whose testimony should be credited." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) (citation omitted). "[A]s trier of fact, the judge is entitled, just as a jury would be, . . . to believe some parts and disbelieve other parts of the testimony of any given witness." *Id*. (internal quotation marks and citations omitted); *see also Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 448 (S.D.N.Y. 2012) ("As the finder of fact, the Court is entitled to make credibility findings of the witnesses and testimony."), *aff'd*, 760 F.3d 247 (2d Cir. 2014); *Newman v. Herbst*, No. 09-cv-4313 (TLM), 2011 WL 684165, at *1 (E.D.N.Y. Feb. 15, 2011) ("In any bench trial, the trial judge has to evaluate the credibility of the witnesses that testify, the witnesses' demeanor, any previous inconsistent statements by a witness, as well as the witness's explanation for any such inconsistent statements.").

In 2008, the Debtor financed the purchase of a taxi medallion with Signature Bank. Tr. 19:21-25. He owned the taxi medallion with Sudesh Kumar, his half-partner. Tr. 22:22-

12, 23:1-2. The Debtor's taxi business was affected by Uber such that by 2016, he had no business at all. Tr. 18:4-6, 37:6-10.

In 2018, the Debtor was having difficulty making the mortgage payments on the Real Property and approached Mr. Cooper about refinancing the mortgage. Tr. 39:9-17. The Debtor testified that Mr. Cooper did not approve the refinancing because he had bad credit. Tr. 18:11-15, 39:23-25. However, Khokhar's credit was good, and Mr. Cooper would approve a refinancing with Khokhar. Tr. 18:16-17; 40:3-5. Khokhar was working and earning income as a dialysis technician. Tr. 18:21-25, 19:1-3. According to the Debtor, Mr. Cooper advised him to transfer the Real Property to Khokhar. Tr. 18:18-20. Mr. Cooper provided the Debtor with an unsigned warranty deed. Tr. 41:2-4. The Debtor was asked to sign the warranty deed transferring the Debtor's interest in the Real Property to Khokhar at closing. Tr. 41:16-18. The Debtor and Khokhar did not have an attorney representing them in the refinancing. Tr. 41:9-13. The Debtor is not a high school graduate. Tr. 35:6, 10.

At the time of the refinancing and the transfer of the deed to Khokhar on September 6, 2018, the Debtor was still paying his utility bills, Tr. 43:24-25, food bills, Tr. 44:1-2, and medallion loan, Tr. 44:3-4, 21-24. The Debtor defaulted on his medallion loan a year later, on August 1, 2019. Tr. 32:13-16, 45:23-25. Shortly thereafter, in October 2019, the medallion was repossessed. Tr. 46:7-12.

The Debtor met with bankruptcy counsel, Richard Feinsilver, in August 2019. Tr. 47:6-7. The Debtor testified that Mr. Feinsilver suggested that prior to the Debtor filing for bankruptcy, he should put his name on the deed to the Real Property in case something should happen to him or his wife; he has children, so the deed would protect them and allow them to stay in the house. Tr. 26:1-5. The Debtor also testified that Mr. Feinsilver discussed the New York State homestead exemption and the benefit of the exemption. Tr. 26-9-12; 27:12-18, 47:17-18.

4

The Debtor testified that during the period February 2019 to February 2020, he was making monthly payments to Crossroads Financial Technologies ("Crossroads") in the amount of $678 ("Crossroads Transfers"). Tr. 51:5-10. Crosswords bundled his credit card payments into one $678 payment. Tr. 57:16-18. The Debtor paid Crossroads a lump sum and Crossroads then used the funds to pay the Debtor's credit cards. Tr. 50:23-15, 51:1-2. The last time the Debtor made a payment on his Discover credit card was in 2020. Tr. 51:17-19. The claims register shows that Discover Bank filed Proof of Claim ("POC") Number 3 indicating that the last payment received was February 24, 2020. Tr. 51:24-25; Claims Register POC No. 3. The Debtor testified that during the time he was using Crossroads in 2019, he was able to meet all his household obligations. Tr. 59:1-3.

On February 20, 2020, the Debtor was sued in connection with his default on the taxi medallion loan. On March 23, 2020, shortly after the Debtor filed for bankruptcy, Crossroads refunded the Debtor $4,803. Tr. 52:11-15. The Debtor did not expect the refund. Tr. 52:18. The Debtor then gave his eldest daughter $4,000 of the funds received from Crossroads so she could buy a laptop or other items for college. Tr. 53:12-17. Plaintiff subsequently sought the return of the funds. Tr. 54:4-8. To raise the money to pay plaintiff, Khokhar asked her colleagues for money. Tr. 54:7-10. The matter was subsequently settled for $3,000. Tr. 54:13-16.

The Debtor testified that in 2019 he was making approximately $40,000 or $50,000 a year as a cab driver using the tax medallion. In March of 2020, the Debtor was working as an Uber driver. Tr. 60:5-6. The Debtor's income at that time was $1,500 a month as set forth in the Debtor's bankruptcy schedules. Tr. 60:5-14; PX 1. The Debtor's household expenses at that time exceeded his income by $268. Tr. 60:15-22; PX 1. In response to Question 6 on his Statement of Financial Affairs, the Debtor stated that he had primarily consumer debt and that in the 90-day period before he filed his chapter 7 petition, he paid a total of $600 or more

to Nationstar-Mr. Cooper. Tr.60:23-25, 61:1-4; PX 1. The Debtor did not list any other payment to creditors in his Statement of Financial Affairs. However, at trial, he testified that he made a payment to Discover Bank in February of 2020, a month prior to the date he filed his chapter 7 petition. Tr: 61:9-12. The Debtor testified that he did not list the payments to Crossroads in his bankruptcy schedules or his Statement of Financial Affairs. Tr. 62:8-13.

## II.    Discussion

### A.  11 U.S.C. § 727(a) Generally

"[A] central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). Denial of a debtor's discharge under § 727(a), therefore, is an "extreme penalty for wrongdoing" that "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (internal quotations and citation omitted); *see also Piazza v. Keswani (In re Keswani)*, Case No. 20-10315-JLG, Adv. Pro. No. 20-01345-JLG, 2022 WL 90605, at *6 (Bankr. S.D.N.Y. Jan. 7, 2022) ("The denial of a debtor's discharge is a drastic remedy.").

### B.  Burden of Proof

To prevail on his claims, plaintiff bears the burden of presenting evidence in support of the allegations in the Complaint that the Debtor's discharge should be denied and proving those allegations by a preponderance of the evidence. "The party objecting to discharge must establish those elements by a preponderance of the evidence." *Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 408 F. App'x 477, 479 (2d Cir. 2011) (citing *Grogan*, 498 U.S. at 287). "The burden of showing something by a preponderance of the evidence . . . simply requires the trier

of fact to believe that the existence of a fact is more probable than its nonexistence . . . ."
*Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997) (quoting *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)).

    C.  11 U.S.C. § 727(a)(2)(A)[3]

    1.  Legal Standard

In the first cause of action of the Complaint, plaintiff seeks a determination that the Debtor's discharge must be denied pursuant to § 727(a)(2)(A). In relevant part, § 727(a)(2)(A) states that a debtor is denied a discharge if:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> (A) property of the debtor, within one year before the date of filing the petition . . . .

11 U.S.C. § 727(a)(2)(A). To prevail under § 727(a)(2)(A), "a plaintiff must show . . . that: (1) the debtor transferred property; (2) said property belongs to the debtor; (3) the transfer occurred with actual intent to hinder, delay, or defraud; and (4) the transfer occurred within one year prior to filing for bankruptcy." *Najjar v. Kablaoui (In re Kablaoui)*, 196 B.R. 705, 708 (Bankr. S.D.N.Y. 1996) (citation omitted). Because actual intent is "rarely proven by direct evidence and thus, courts look to see if certain 'badges of fraud,' which are strong indicia of actual fraudulent intent, are present." *Flushing Sav. Bank, FSB v. Vidro (In re Vidro)*, 497 B.R. 678, 687 (Bankr. E.D.N.Y. 2013). These badges include:

    (1)    the lack or inadequacy of consideration;

---

[3] Plaintiff has alleged multiple causes of action seeking to deny the Debtor a discharge under § 727(a)(2)(A), (a)(3), (a)(4)(A) and (a)(5). However, at trial, plaintiff's case-in-chief focused only on the transfers of the Real Property and the request to deny the Debtor's discharge under § 727(a)(2)(A). Nevertheless, for the sake of completeness, the Court will address each cause of action alleged in the Complaint.

(2)    the family, friendship or close associate relationship between the parties;

(3)    the retention of possession, benefit or use of the property in question;

(4)    the financial condition of the party sought to be charged both before and after the transaction in question;

(5)    the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6)    the general chronology of the events and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

2.    Analysis

Plaintiff argues that the Debtor's discharge must be denied because the Real Property, originally owned jointly by the Debtor and Khokhar, was transferred to Khokhar and subsequently transferred by Khokhar to the Debtor and her. The first transfer, identified earlier as Transfer 1, occurred in September of 2018, well outside the one-year period prior to March 20, 2020, the date the Debtor filed his chapter 7 petition. For purposes of § 727(a)(2)(A), the transfer at issue must occur within one year of the bankruptcy filing. *DeNoce v. Neff (In re Neff)*, 824 F.3d 1181, 1187-88 (9th Cir. 2016), *cert. denied*, 137 S.Ct. 831 (2017) (noting that the one-year period in § 727(a)(2) was not subject to equitable tolling and debtor's transfer of property more than one year prior to the petition date was not an impediment to the debtor's discharge). Moreover, there is no evidence in the record that the Debtor continuously concealed his interest in the Real Property from his creditors during the one-year period prior to the filing of his chapter 7 petition.

The second transfer, identified earlier as Transfer 2, occurred within the one-year period. However, the evidence presented at trial failed to demonstrate that the Debtor, with intent to hinder, delay or defraud his creditors, transferred the Real Property. Rather, plaintiff argues that the second transfer enabled the Debtor to claim a homestead exemption,

thus placing the Real Property out of reach of his creditors in the bankruptcy case. This argument is unpersuasive. In the Debtor's bankruptcy case, plaintiff did not file an objection to the Debtor's claimed homestead exemption with respect to the Real Property. Additionally, plaintiff did not bring an adversary proceeding to avoid and recover the transfers as fraudulent under §§ 548(a) and 550 and, if successful, seek to invoke § 522(g) to disallow the claimed homestead exemption. Further, "[i]t is well settled that the mere conversion of non-exempt assets to exempt assets is not in itself fraudulent." *Addison v. Seaver (In re Addison)*, 540 F.3d 805, 813 (8th Cir. 2008) (quoting *In re Sholdan*, 217 F.3d 1006, 1010 (8th Cir. 2000)). The Bankruptcy Code "continues to adopt the position favorably viewed by the Code drafters that the mere conversion of nonexempt property into exempt property, without fraudulent intent, does not deprive the debtor of exemption rights in the converted property." *In re Agnew*, 355 B.R. 276, 283-4 (Bankr. D. Kan. 2006) (quoting 4 Collier on Bankruptcy ¶ 522.08[5]); *see also Labbadia v. Martin (In re Martin)*, No. 3:20-cv-939 (SRU), 2021 WL 1670292, at *6 (D. Conn. Apr. 27, 2021).

Thus, plaintiff has not met his burden of proving that the Debtor should be denied a discharge under § 727(a)(2)(A) because he failed to show, by a preponderance of the evidence, (i) that the first transfer was made within one year before the Debtor filed his chapter 7 petition or that there was a continuing concealment of the transfer within such one year period and (ii) that either transfer was made with intent to hinder, delay, or defraud a creditor. While the transfers occurred between spouses for no consideration and the Debtor retained the benefit of residing at the Real Property before and after the transfers, the Debtor credibly explained that Transfer 1 in September 2018 of his interest in the Real Property to Khokhar occurred pursuant to a refinancing of the existing mortgage and at the request of the mortgage lender. The mortgage lender prepared the deed for Transfer 1 and the deed and refinancing documents were entered into contemporaneously. Moreover, the Debtor had not

defaulted on his taxi medallion loan at the time of Transfer 1 and was paying his utility and food bills. As for Transfer 2, plaintiff's conclusory argument that it was made with intent to hinder, delay, or defraud creditors because it enabled the Debtor to claim the homestead exemption finds no support in the record. First, plaintiff did not challenge the claimed homestead exemption. Second, the Debtor credibly testified that Transfer 2 was made after consulting with bankruptcy counsel and plaintiff did not introduce any evidence to directly rebut the Debtor's testimony on this point. Nor did plaintiff introduce any evidence or cite to any legal authority to support a claim that a transfer made on the advice of counsel revesting a debtor with ownership interest in real property prior to filing for bankruptcy is *per se* improper.

    D.  11 U.S.C. § 727(a)(3)

      1. Legal Standard

A debtor's complete and accurate disclosure of his financial affairs is a condition precedent to a debtor's discharge. *In re Underhill*, 82 F.2d 258, 260 (2d Cir.), *cert. denied*, 299 U.S. 546 (1936); *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992); *Jacobowitz v. The Cadle Co. (In re Jacobowitz)*, 309 B.R. 429, 435 (S.D.N.Y. 2004). Thus, § 727(a)(3) provides for a denial of discharge when:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). "The policy underlying Section 727(a)(3) is to insure that the trustee and the creditors receive sufficient information to effectively enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." *Barristers Abstract Corp. v. Caulfield (In re Caulfield)*, 192 B.R. 808, 822 (Bankr. E.D.N.Y. 1996) (internal quotations and citations omitted).

The § 727(a)(3) inquiry is two-pronged. First, the party seeking to deny the debtor's discharge has the initial burden to "show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 235 (2d Cir. 2006) (citing *White v. Schoenfeld*, 117 F.2d 131, 132 (2d Cir. 1941)). A debtor need not have a bank account or an "impeccable system of bookkeeping," *Meridian Bank*, 958 F.2d at 1230, but debtor should be able to "produce at least minimal records" to allow creditors to trace the debtor's financial history, *Jacobowitz*, 309 B.R. at 437. Whether the debtor's records are sufficient is within the court's discretion. *Caulfield*, 192 B.R. at 823. If the moving party can demonstrate "that the debtor's failure to keep records has made it impossible to ascertain the debtor's financial condition and material business transactions," *Jacobowitz*, 309 B.R. at 436, then the burden shifts to the debtor to "satisfy the court that [the debtor's] failure to produce them was justified." *Cacioli*, 463 F.3d at 235.

What constitutes justification is "a question in each instance of reasonableness in the particular circumstances." *Cacioli*, 463 F.3d at 235 (quoting *Underhill*, 82 F.2d at 259-60). In examining the reasonableness of the debtor's failure to maintain adequate records, courts consider, to the extent relevant, factors such as:

1) the education, experience, and sophistication of the debtor;
2) the volume of the debtor's business;
3) the complexity of the debtor's business;
4) the amount of credit extended to debtor in his business; and
5) any other circumstances that should be considered in the interest of justice.

*Meridian Bank*, 958 F.2d at 1231 (quoting *Milam v. Wilson (In re Wilson)*, 33 B.R. 689, 692 (Bankr. M.D. Ga. 1983)); *see also Osuji v. Azie*, 20-CV-1365 (PKC), 2021 WL 602699, at *4 (E.D.N.Y. Feb. 16, 2021). "It is a 'loose test, concerned with the practical problems of what

can be expected of the type of person and type of business involved.'" *Cacioli*, 463 F.3d at 235 (quoting *Morris Plan Indus. Bank of N.Y. v. Dreher*, 144 F.2d 60, 61 (2d Cir. 1944)).

      2.  Analysis

      In his Complaint, plaintiff alleges that the Debtor's discharge must be denied under § 727(a)(3) because the Debtor concealed information relating to his financial condition by failing to disclose amounts due and owing ***to*** him ***from*** Crossroads based upon a refund of a portion of the Crossroads Transfers. Although plaintiff did not address the Crossroads Transfers during his case-in-chief, the Debtor, under questioning by his counsel and on cross-examination, testified as to the circumstances leading up to the Crossroads Transfers and the receipt post-petition of funds from Crossroads. For the following reasons, the Court finds that plaintiff has not met his burden of proving that the Debtor concealed or failed to preserve any records or information regarding Crossroads and the Crossroads Transfers. First, there is no evidence in the record that plaintiff requested the production of bank statements from the Debtor or that the Debtor refused to comply or produce such documents. Second, there was no showing that the Debtor failed to keep or preserve any books or records from which the transactions with Crossroads could be ascertained. Third, plaintiff obtained the Debtor's checking account statements from Capital One (USA), N.A. under a Bankruptcy Rule 2004 order and traced the Crossroad Transfers and the refund from Crossroads. Yet, plaintiff did not seek to challenge the Crossroads Transfers and resolved amicably the dispute over the refund received by the Debtor from Crossroads.

      Moreover, even if plaintiff had met his initial burden of proof, the Debtor's explanation regarding his failure to disclose the refund from Crossroads he received post-petition was justified under the circumstances of this case. Debtor did not graduate from high school and did not demonstrate a high level of business sophistication. There is no evidence the Debtor was aware that Crossroads was holding onto a sizable sum, that the Debtor anticipated a

refund from Crossroads upon his bankruptcy filing or that the refund constitutes a prepetition asset required to be disclosed and turned over to plaintiff. From the perspective of the Debtor, he transferred funds to Crossroads as part of a debt consolidation plan and those funds were used to pay his outstanding debts. The $4,803.84 refund amounted to more than half of the $8,136.00 the Debtor paid over the one-year period prepetition and was returned to him when Crossroads learned of the bankruptcy filing. The Court accepts the testimony of the Debtor regarding funds paid and received from Crossroads. He presented himself credibly and the Court believes that he testified honestly as to what he recalls of the transaction, without attempting to be evasive or misleading. Further, there is no evidence that the Debtor timed his bankruptcy filing before Crossroads released the funds to pay his creditors so that he could claim a refund from Crossroads.

Accordingly, plaintiff has not met his burden of proving, by a preponderance of the evidence, that the Debtor's discharge should be denied under § 727(a)(3).

E.  Section 727(a)(4)(A)

1.  Legal Standard

Section 727(a)(4)(A) provides, in pertinent part:

> (a) The court shall grant the debtor a discharge, unless—
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
> (A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A). "The purpose of § 727(a)(4)(A) is to insure that adequate information is available to those interested in the administration of the bankruptcy estate without the need of examination or investigation . . . ." *Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000). "Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the bankruptcy system. Because the bankruptcy court, trustees, and creditors rely on the information disclosed by a debtor, the importance of

full disclosure cannot be overemphasized." *In re Lowery,* 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008).

To prevail under § 727(a)(4)(A), the objecting party must establish by a preponderance of the evidence that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case." *Gobindram v. Bank of India*, 538 B.R. 629, 637 (E.D.N.Y. 2015) (quotations and citation omitted); *see also Republic Credit Corp. I v. Boyer (In re Boyer)*, 328 F. App'x 711, 715 (2d Cir. 2009) (summary order).

"Once the moving party meets its initial burden to produce evidence of a false statement, the burden of production then shifts to the debtor to produce a credible explanation, for making the false and fraudulent representations, or to prove that it was not an intentional misrepresentation." *Abraham v. Stuart,* No. 15-CV-04864 (JFB), 2016 WL 4045432 at *7 (E.D.N.Y. 2016) (internal quotation marks and citations omitted), *aff'd,* 693 F. App'x. 59 (2d Cir. 2017) (summary order). In assessing the credibility of such explanation, "[c]ourts may consider the debtor's education, business experience, and reliance on counsel" and whether such reliance is reasonable. *Zitwer v. Kelly* (*In re Kelly*), 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992)); *see also Abraham*, 2016 WL 4045432, at *7; *Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993). If the debtor does not produce an adequate explanation, "a court may infer fraudulent intent." *United States v. Manno-DeGraw (In re Manno-DeGraw)*, Case No. 8-15-73332-reg, Adv. Proc. No. 8-16-08006-reg, 2016 WL 3708062, at *2 (Bankr. E.D.N.Y. July 6, 2016) (citing *In re Virovlyanskiy*, 485 B.R. 268, 272 (Bankr. E.D.N.Y. 2013) ("If the debtor fails to provide evidence that the false statement was unintentional, or to provide a credible explanation, the court may infer a fraudulent intent.")).

"[T]he overall burden of proof," however, "remains with the moving party." *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 59 (E.D.N.Y. 2010).

The legal framework for each element the objecting party must establish for purposes of § 727(a)(4)(A) follows.

a.    Statement Under Oath

"A bankruptcy petition, schedules and related statements are declarations made under penalty of perjury and 'constitute a statement under oath for purposes of § 727(a)(4)(A).'" *Manno-DeGraw*, 2016 WL 3708062, at *2 (quoting *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994)). False oaths can encompass affirmative statements and omissions made not just in the debtor's petition, schedules, and statement of financial affairs but also in statements made during examinations. *Harrington v. Kupersmith (In re Kupersmith)*, 614 B.R. 428, 439 (Bankr. D. Conn. 2020) (statements a debtor makes in schedules and at the § 341 meeting of creditors are statements under oath for purposes of § 727(a)(4)); *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008).

b.    False Statement

"A statement is false if (1) it omits even one asset or source of income; (2) necessar[y] material information is repeatedly left undisclosed during a case's pendency; or (3) an affirmative misstatement[ ] is made and is not corrected during an examination or at any point during [the] case's proceeding." *Ng v. Adler (In re Adler)*, 494 B.R. 43, 75 (Bankr. E.D.N.Y. 2013), *aff'd*, 518 B.R. 228 (E.D.N.Y. 2014) (finding debtor made false statements when he failed to include his spouse's checking account information, his income from prior years, and his ownership stake in various corporations); *see also Bank of India v. Gobindram (In re Gobindram)*, Case No. 11-75802-reg, Adv. Proc. No. 11-9499-reg, 2014 WL 2809078, at *5 (Bankr. E.D.N.Y. June 20, 2014) ("The plain language of [§ 727(a)(4)(A)] provides that one

single false oath or account is sufficient to deny a debtor's discharge."), *aff'd*, 538 B.R. 629 (E.D.N.Y. 2015).

c.    Materiality

"[M]ateriality does not require a showing that the creditors were prejudiced by the false statement." *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974); *see also In re Gordon*, 535 B.R. 531, 538 (S.D.N.Y. 2015); *Pergament v. Gonzalez (In re Gonzalez)*, 553 B.R. 467, 474 (Bankr. E.D.N.Y. 2016). "'Materiality' merely requires a showing that the relevant information was something that creditors and the trustee reasonably would have regarded as significant in identifying the assets of the estate that could be liquidated and used to satisfy claims . . . ." *Mazer-Marino v. Levi (In re Levi)*, 581 B.R. 733, 754 (Bankr. S.D.N.Y. 2017). "A false oath is material 'if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Agai v. Antoniou (In re Antoniou)*, 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014) (quoting *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)).

"[E]ven worthless assets and unprofitable business transactions must be disclosed." *Gannon*, 173 B.R. at 320; *see also Abraham*, 2016 WL 4045432, at *8 (noting that debtors have an absolute obligation to disclose whatever interest they have in an asset even if they believe such asset to be worthless, unavailable, or exempt from creditors). "[E]ven if each falsehood or omission considered separately may be too immaterial to warrant a denial of [a] discharge pursuant to § 727(a)(4)(A) . . . a multitude of discrepancies, falsehoods and omissions taken collectively . . . [may be of] sufficient materiality to bar the Debtor's discharge." *Maletta*, 159 B.R. at 113 (quoting *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 315-16 (Bankr. E.D.N.Y. 1991)).

It is not for a debtor to decide what information is immaterial or unimportant or which asset is of no benefit to creditors. *Levi*, 581 B.R. at 754; *O'Connell v. DeMartino (In re DeMartino)*, 448 B.R. 122, 130 (Bankr. E.D.N.Y. 2011). "Allowing debtors the 'discretion' to choose the information that is worth disclosing 'would create an end-run around the strictly crafted system' of bankruptcy administration." *Beer Sheva Realty Corp. v. Pongvitayapanu (In re Pongvitayapanu)*, 487 B.R. 130, 140 (Bankr. E.D.N.Y. 2013) (quoting *Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 715 (Bankr. D.S.C. 1995)).

       d.      Knowledge of the Falsehood

If the debtor "knows what is true and, so knowing, willfully and intentionally swears to what is false," *In re Kaufhold*, 256 F.2d 181, 185 (3d Cir. 1958), then the knowledge requirement is satisfied. *Moreo¸* 437 B.R. at 62; *see also Capital One Equip. Fin. Corp. v. Singh (In re Singh)*, 585 B.R. 330, 338 (Bankr. E.D.N.Y. 2018) (finding debtor had knowledge of the false statements where debtor was aware of mistakes and omissions in the petition and schedules and was represented by counsel). Indeed, courts "do not read § 727(a)(4)'s knowledge requirement . . . as necessitating an awareness of a legal obligation to disclose particular information. [Debtor's] actual knowledge of the omitted information itself suffices to fulfill this element." *In re Chlad*, 922 F.3d 856, 862 (7th Cir. 2019). "Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement, but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel." *Maletta*, 159 B.R. at 112 (quoting *Kelly*, 135 B.R. at 462).

       e.      Fraudulent Intent

"A debtor's intent to defraud or deceive can be proven by evidence of either (1) the debtor's actual intent to deceive or (2) the debtor's reckless disregard for the truth." *Abraham*,

2016 WL 4045432, at *7 (citing *Adler v. Ng (In re Adler)*, 395 B.R. 827, 843 (E.D.N.Y. 2008)). "Intent to defraud, however, 'will not be found in cases of ignorance or carelessness.'" *Id.* (quoting *Gardner*, 384 B.R. at 667)). As debtors will seldom admit to an intent to deceive, courts can look to the presence of "badges of fraud" to determine whether a debtor had requisite intent to defraud or deceive. *Id.* (quoting *Kaiser*, 722 F.2d at 1582).

When determining whether a debtor exhibited a reckless disregard or indifference to the truth, "courts in the Second Circuit have recognized that fraudulent intent may be inferred from a series of incorrect statements and decisions contained in the schedules." *Abraham*, 2016 WL 4045432, at *7 (citing *Dubrowsky*, 244 B.R. at 571-72). Under this prong, courts consider:

> (a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering;
> (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and
> (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies.

*Id.* (quoting *Antoniou*, 515 B.R. at 24 (internal quotations and citations omitted)).

2. Analysis

At trial, the only omissions from the Debtor's schedules and Statement of Financial Affairs identified by plaintiff are (i) the Debtor's failure to disclose the monthly payments to Crossroads, and (ii) a payment to Discover Bank during the 90-day prepetition period as set forth in response to Question 6 of the Statement of Financial Affairs and at the meeting of creditors held pursuant to § 341(a). For the following reasons, these two "omissions" do not warrant denying the Debtor his discharge under § 727(a)(4)(A). First, the payment to Discover Bank need not be disclosed under Question 6 as the proof of claim shows a payment on February 24, 2020 in the sum of $250.00, which is under the $600 disclosure threshold in Question 6. There is nothing in the record showing any other prepetition payment made to

Discover Bank. Second, as to the payments to Crossroads, there is no dispute that the Debtor failed to disclose the monthly payments of $678. However, there is no evidence that the Debtor knowingly omitted the payments in his Statement of Financial Affairs, much less that the omission was made with the intent to defraud or deceive or reckless indifference or disregard for the truth. Based on the trial record, the omission was nothing more than inadvertent, and not by reason of any design or scheme to hide assets or information from plaintiff as trustee of his bankruptcy estate, and creditors. As noted above, the Court accepts the testimony of the Debtor as to the Crossroads Transfers as he presented himself credibly. Considering the debtor's education and business experience, his explanation for the nondisclosure of funds paid to Crossroads for the purpose of paying his creditors under a debt consolidation is credible. Moreover, nothing in the trial record leads to a conclusion that the omission is material. No evidence was introduced that the Crossroads Transfers were assets, sources of income, or fraudulent transfers that the Debtor was attempting to conceal from his creditors. Rather, these were payments the Debtor was making for the benefit of his creditors and may have constituted voidable preferences at best that were not challenged by plaintiff in the bankruptcy case. The Debtor was not aware that he was entitled to a return of funds not yet disbursed by Crossroads and he cooperated with plaintiff in turning over the refund to the estate without the need for motion practice or litigation once he was made aware that the refund was property of the bankruptcy estate.

Accordingly, plaintiff has not met his burden of proving, by a preponderance of the evidence, that the Debtor's discharge must be denied under § 727(a)(4)(A).

F.   11 U.S.C. § 727(a)(5)

1.   Legal Standard

A debtor's discharge may be denied pursuant to § 727(a)(5) if the debtor "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any

loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The analysis under § 727(a)(5) "involves a similar two-step burden-shifting analysis as under § 727(a)(3)." *Osuji*, 2021 WL 602699, at *6. The objecting party has the burden of first demonstrating there was a loss or deficiency of assets. *Cacioli*, 463 F.3d at 238. If such a showing is made, then the burden shifts to the debtor to explain the loss or deficiency. *Id.*; *Caulfield*, 192 B.R. at 821. "As long as the debtor's explanation is convincing and not rebutted, there is no need for documentary corroboration." *Cacioli*, 463 F.3d at 238 (citing *Krohn v. Cromer (In re Cromer)*, 214 B.R. 86, 97 (Bankr. E.D.N.Y. 1997)). The debtor's attempt to explain any loss of assets does not need to be "particularly praiseworthy, [it] just has to indicate where the assets were spent." *Osuji*, 2021 WL 602699, at *6 (internal quotations and citation omitted). "The debtor's explanation does not need to be meritorious, and the loss or disposition of assets does not need to be proper for the debtor to satisfy section 727(a)(5)." *Brisman v. Parasram (In re Parasram)*, 647 B.R. 1, 22 (Bankr. E.D.N.Y. 2022). "A debtor's explanation only needs to 'satisfactorily account [for] the disposition." *Id.* (quoting *Premier Capital, LLC v. Gasson (In re Gasson)*, Case No. 12-23703 (RDD), Adv. Proc. No. 14-08217 (SHL), 2018 WL 6603737, at *18 (Bankr. S.D.N.Y. Dec. 13, 2018), *aff'd*, 629 B.R. 539 (S.D.N.Y. 2021), *aff'd*, 43 F.4th 37 (2022)).

2.  Analysis

Plaintiff argues that the Debtor's discharge should be denied under § 727(a)(5) because he failed to explain satisfactorily any loss of assets or deficiency to meet his liabilities by failing to account for the "no consideration transfer" of the Real Property.[4] As noted above, plaintiff's conclusory statement that Transfer 2 enabled the Debtor to claim a homestead exemption and thus a denial of discharge is unpersuasive. It bears repeating that the Debtor

---

[4] The Complaint did not identify what the "no consideration transfer" consisted but it is clear from the trial record that it refers to the Real Property transfers discussed above.

credibly explained the circumstances surrounding each of the transfers of the Real Property, and no evidence was presented to directly rebut the Debtor's testimony. Accordingly, plaintiff has not met his burden of proving, by a preponderance of the evidence, that the Debtor's discharge must be denied under § 727(a)(5) under the same circumstances.

III.    Conclusion

For the reasons stated above, the Court concludes that plaintiff has not met his burden of proof and finds in favor of the Debtor. Judgment shall be entered granting the Debtor a discharge.

So ordered.

Dated: June 26, 2023
      Central Islip, New York



Louis A. Scarcella
United States Bankruptcy Judge